IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **PETER MASSARO,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-0929 |
| | ) | |
| **FAIRFAX COUNTY,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Plaintiff in this case, Peter Massaro, alleges his employer Fairfax County Police Department (hereinafter the "Police Department") retaliated against Massaro, in violation of (i) Title VII of the Civil Rights Act, (ii) the Age Discrimination in Employment Act, and (iii) the First Amendment, after Massaro filed a complaint about the Police Department's decision to promote another officer over Massaro. At issue now are the parties fully briefed and orally argued cross motions for summary judgment. The motions are therefore ripe for disposition. For the following reasons, the defendant's motion for summary judgment must be granted on all three counts, and for the same reason the plaintiff's cross motion for summary judgment must be denied.

**I**

Summary judgment is appropriate only where there are no genuine disputes of material fact and thus, it is important to identify the record facts as to which no genuine dispute exists. In this regard, Local Rule 56 requires that a motion for summary judgment must contain a separately captioned section listing, in numbered paragraph form, all material facts that the movant contends are not genuinely disputed. *See* Rule 56, Local Civ. R. The nonmovant must then respond to each numbered paragraph indicating whether the nonmovant disputes the

asserted fact and, if the nonmovant disputes an asserted fact, the nonmovant must cite to the legally admissible evidence in the record supporting the dispute. Failure of the nonmovant to respond in this fashion requires that the asserted fact must be taken as admitted. Both parties have essentially complied with Local Rule 56 in this respect, and the undisputed material facts are therefore recited below:

- Massaro is a police officer employed by Fairfax County as a second lieutenant. Massaro joined the department in 1996. Massaro currently serves as an evening patrol officer out of the McClean District Station.

- From February 2018 to May 2020, Massaro was the supervisor of the firearm training range at the Fairfax County Criminal Justice Academy (hereinafter the "Academy"). Massaro's supervisors at the Academy included First Lieutenant Jeffrey Reiff, Captain Jeffrey Powell, and Major Anthony Matos.

- The Police Department has established a process for promotions for police officers, which includes a written examination. In November 2017, Massaro took and passed the examination for promotion to the rank of First Lieutenant. A total of 63 candidates, including Massaro, passed the examination in November 2017.

- Edwin C. Roessler, Jr. served as Chief of Police for Fairfax County at all relevant times for this case. Chief Roessler was the ultimate decision maker in promoting candidates to the rank of First Lieutenant.

- In 2018, Fairfax had two promotion cycles, one in April and one in September. In each cycle, several candidates were selected for promotion to First Lieutenant. Massaro was not selected for promotion in either cycle. Massaro nonetheless remained on the list of candidates eligible for promotion in future promotion cycles.

- The initial candidate list for the 2018 promotions grouped candidates into three groups according to written examination score: (i) highly qualified, (ii) qualified, and (iii) not qualified. The highly qualified group included Marisa Kuhar and Loriann LaBarca but did not include Massaro. Massaro was included in the qualified group. Chief Roessler requested that all candidates who received a passing score on the exam, whether they were initially listed as highly qualified or qualified, be identified as highly qualified.

- During the September 2018 promotion cycle, four candidates were selected for promotion to First Lieutenant. Kuhar was one of the four candidates selected. Massaro did not believe that Kuhar met the educational requirements for promotion to First Lieutenant.

- Rose Armour serves as the Career Development Coordinator for the Fairfax County Police Academy. Part of Armour's job duties include verifying that candidates for promotion have satisfied all requirements for promotion, including educational requirements.

- During the September 2018 promotion cycle, Armour spoke with Kuhar about the County's educational requirements for promotions to First Lieutenant. Specifically, Armour discussed Standard Operating Procedure 11–141, which requires that candidates for promotion to First Lieutenant either must have an associate's degree from an accredited college or must be enrolled in an accredited college with a minimum of 60 credit hours towards a bachelor's degree.

- On September 19, 2018, Armour concluded that Kuhar did not currently meet the educational requirements for promotion to First Lieutenant. Armor communicated this information to Chief Roessler, and Kuhar's promotion was rescinded and deferred until Kuhar could meet the educational requirements. Mark Dale was promoted in place of Kuhar.

- On September 26, 2018, Massaro filed a discrimination complaint with Fairfax's Office of Human Rights and Equity Programs ("OHREP"). Massaro's complaint alleged that Massaro was the most qualified candidate for the First Lieutenant promotion, not Kuhar, and that Massaro believed Chief Roessler had promoted Kuhar, who is a woman, over Massaro because of Massaro's sex. Massaro's complaint was later amended to include claims of age and race discrimination.

- Complaints of discrimination in the Fairfax County Police Department trigger two investigations. One, conducted by OHREP, investigates whether the Police Department has violated the law or violated County policy. The other investigation, conducted by the Police Department's Internal Affairs Bureau ("IAB"), determines whether there have been any violations of departmental policy.

- After Massaro filed his complaint, OHREP initiated an investigation. The investigation was managed by Mary Soliman, who sent an email to IAB Major Gervais Reed. In the email, Soliman requested documents pertaining to the September 2018 promotion process. The documents provided to Soliman indicated that although Kuhar was initially selected for a promotion, subsequent review showed that Kuhar did not meet the County's 60 credit hour requirement and Kuhar's promotion was rescinded.

- After OHREP learned that Kuhar had not received a promotion, OHREP informed Massaro that his complaint would be dismissed because Massaro had not suffered an adverse employment action due to Kuhar's now-rescinded promotion. Massaro took no further action on his OHREP complaint.

- In October 2018, Second Lieutenant Timothy Burgess filed a complaint regarding the September 2018 promotion cycle. Burgess's complaint made the same allegations that Massaro had made regarding Kuhar's selection for promotion. Burgess also identified

- other individuals (besides Kuhar) who Burgess alleged had been improperly selected for promotion ahead of Burgess.

- During the investigation of Burgess's complaint, OHREP and IAB conducted a joint interview of Chief Roessler. As a result of that interview and the rest of the investigation, both OHREP and IAB independently concluded that Burgess's complaint was unfounded.

- In May of 2019, Major Paul Cleveland was transferred to the Academy to serve as Commander. Massaro and his immediate supervisor, First Lieutenant Jeffrey Reiff, met with Cleveland on May 6, 2019, to discuss Cleveland's scheduled transfer to the Academy. At that meeting, Cleveland explained to Massaro and Reiff that senior leadership in the Fairfax Police Department had concerns about the operation of the Academy, due to a series of issues including an accidental firearm discharge and other safety violations. Reiff and Massaro pressed Cleveland for any additional reasons why Cleveland was transferred to the Academy, and the parties dispute whether Cleveland referenced Massaro's OHREP complaint as a potential reason for Cleveland's transfer.[1]

- Shortly after accepting the transfer, Cleveland visited the Academy and met with Massaro. He explained to Massaro that since both Cleveland and Massaro were in delayed retirement programs with only three years of work remaining, Cleveland hoped that the two could complete their last few years of work without incident.

- Cleveland, Massaro, and Reiff agreed that the Academy needed more staff and discussed a process for identifying suitable candidates for these positions. The selection process consisted of interviews and testing. At the end of the process, Massaro and Reiff submitted the names of two individuals for selection. Cleveland had doubts about these two candidates, as one candidate did not have much job experience and the other candidate had been found to have had an inappropriate relationship with one of his recruits. Exercising his authority as senior Commander at the Academy, Cleveland selected two other individuals for the open positions. Both individuals Cleveland selected had more job experience with the police force than did the two individuals Massaro and Reiff had selected.

- On May 13, 2019, Cleveland explained his decision about the selection process to Massaro and Reiff. The meeting became heated and tense. Massaro was unhappy with

---

[1] Massaro claimed in his deposition testimony that Massaro asked Cleveland why Cleveland was transferred to the Academy and Massaro claims Cleveland responded that "it didn't help that you filed a complaint against the chief," apparently referring to Massaro's September 2018 complaint. Massaro Dep., Ex. 1, at 112:2-3. Cleveland, in his deposition, could not remember making that remark, but did not deny making it. In any event, whether or not Cleveland was transferred to the Academy as a result of Massaro's September 2018 complaint is not material, as Cleveland's transfer does not constitute an adverse employment action vis a vis Massaro and therefore cannot form the basis of Massaro's retaliation claim. *See e.g.*, *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).

- Cleveland's decision and said that Massaro believed Cleveland was usurping his authority as Second Lieutenant.

- On May 22, 2019, First Lieutenant LaBarca visited the firing range at the Academy. LaBarca had been promoted to First Lieutenant in April 2018, during the same promotion cycle that Massaro had complained of when he filed his September 2018 OHREP complaint.

- Massaro's office is near the entrance to the firing range, and on May 22, 2019, Massaro heard LaBarca speaking in the common area and invited LaBarca into his office.

- During the conversation between Massaro and LaBarca, Massaro told LaBarca that there were other candidates more qualified than she for promotion to First Lieutenant and that LaBarca's gender (female) was a decisive factor in her promotion.[2]

- LaBarca was upset by Massaro's remarks. After their conversation, LaBarca returned to headquarters and spoke with her supervisor, Major Hurlock, about her conversation with Massaro. Hurlock called Cleveland and asked Cleveland to join the conversation with LaBarca. LaBarca wanted Cleveland to address the issue with Massaro, but Cleveland felt obligated to report the matter to IAB. Two IAB officers, Major Owens and Major Reed, soon met with LaBarca to discuss the complaint.

- After IAB took the complaint from LaBarca, IAB initiated an investigation and assigned Captain Ron Manzo to the matter. Manzo took LaBarca to OHREP's offices for a joint OHREP/IAB interview pertaining to LaBarca's complaint. IAB officers asked Cleveland to bring Massaro to Fairfax headquarters for an interview.

- On May 23, 2019, IAB officers interviewed Massaro a second time relating to LaBarca's complaint. Massaro became upset during the second interview and raised his voice at IAB investigators, at which point Cleveland volunteered to go into the interview in an attempt to calm Massaro. When Cleveland went into the room, Massaro yelled at Cleveland and accused Cleveland of taking part in a plot to set up Massaro and intimidate Massaro. Cleveland soon left the room.

- On May 23, 2019, Massaro was temporarily relieved of duty due to Massaro's statements during the IAB interview. Chief Roessler was informed of LaBarca's complaint and of IAB's decision to place Massaro on administrative leave.

- Three days later, on May 26, 2019, Major Robert Blakely conducted a mandatory review hearing to review the decision to place Massaro on administrative leave. At that hearing, Hirshey presented the complaint LaBarca had made against Massaro and the statements

---

[2] The parties dispute what was said during the course of LaBarca's conversation with Massaro, but the content of this conversation is not a material fact at issue in the pending motions for summary judgment.

    Massaro had made during his interview. After reviewing this evidence, Blakely affirmed the decision to place Massaro on a temporary administrative leave.

- After reviewing the tape of Massaro's interview, Chief Roessler decided to have Massaro undergo an evaluation to ensure that Massaro remained fit for duty.[3]

- OHREP conducted a separate investigation into Massaro's behavior and issued a July 2019 report finding that allegations of sexual harassment and hostile work environment against Massaro could not be sustained.

- Hirshey prepared a written report based on his investigation of Massaro. That report concluded that Massaro had violated two provisions of Fairfax Police Department's regulations governing the behavior of police officers, namely Regulation 201.14 (Unlawful Discrimination, including Sex Discrimination) and Regulation 201.13 (Human Relations – Employee Conduct). In preparing his report, Hirshey never spoke with Chief Roessler, Reed, or Cleveland. Owens, as part of the IAB team, reviewed Hirshey's report before it was finalized, and Owens agreed with Hirshey's findings.

- Captain Michael Wall performed a first review of Hirshey's report to determine what, if any, disciplinary action was appropriate. Wall reversed Hirshey's finding that Massaro violated Regulation 201.14 (Unlawful Discrimination, including Sex Discrimination) but sustained the Regulation 201.13 violation. Wall recommended that Massaro be disciplined by receiving a one day's suspension without pay. Wall had no discussion with Chief Roessler or with any other Deputy Chiefs concerning the conclusion of Wall's report and there is no evidence of any attempt by anyone to influence Wall's conclusions in his report.

- Massaro appealed the conclusion in Captain Wall's report to the next level of review, which was conducted by Major Blakely. Lieutenant Colonel Lee asked Blakely to conduct the second-level review of Wall's report, and Lee at no point mentioned Massaro's 2018 complaint or any expected outcome in Blakely's review.

- As part of this review, Blakely reviewed Wall's report, the IAB file, including LaBarca's statements, and the video of Massaro's interviews. Blakely also held a hearing at which Massaro appeared with the aid of counsel. Blakely ultimately agreed that the hostile work environment claim was not sustained and that the human relations violation under

---

[3] Although the parties dispute Chief Roessler's reasons for ordering a fitness for duty evaluation, that dispute is not material to the disposition of the pending motions. During his deposition, Chief Roessler said that he made the decision due to concerns about the level of anger Massaro displayed and concerns about Massaro's well-being. Massaro disputes this, arguing that Chief Roessler ordered the fitness of duty evaluation solely to humiliate and punish Massaro. This is not a dispute about a material fact for the pending motions for summary judgment, as Chief Roessler's justification for ordering the fitness for duty evaluation has little to do with the complaint Massaro made 8 months earlier concerning the Police Department's decision to promote Kuhar over Massaro.

- Regulation 201.13 should be sustained. In terms of punishment, Blakely agreed that a one-day suspension without pay was appropriate, but also recommended a disciplinary transfer out of the Academy.

- On January 24, 2020, Blakely gave Massaro advanced notice of the anticipated disciplinary transfer. Blakely explained his reasons to Massaro.

- Massaro appealed Blakely's review. Consistent with department procedures, a three-person panel held a hearing to consider Massaro's appeal of Blakely's review. After reviewing the evidence, the panel was unable to reach a unanimous decision. Two members of the panel explained that because LaBarca and Massaro disagreed about the content of their conversation, the panel could not determine which version of the conversation was factual and accordingly could not sustain any charges against Massaro. The third panel member concluded that the violation against Massaro could be sustained and that a one-day suspension would be appropriate discipline, but recommended against a disciplinary transfer.

- Chief Roessler conducted a review of LaBarca's complaint and the appeal, and made the ultimate decision regarding Massaro in light of the panel decision. Chief Roessler determined that a violation of Regulation 201.13 was sustained by the record and determined that a disciplinary transfer was an appropriate measure. Chief Roessler declined to impose a one-day suspension. The County Executive, Bryan Hill, reviewed Chief Roessler's decisions and affirmed them.

### III.

Under Rule 56, Fed. R. Civ. P., a party is entitled to summary judgment if the undisputed facts show that there is no genuine issue as to any material fact and that that party is entitled to judgment as a matter of law. On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. *Boitnott v. Coming, Inc.*, 669 F.3d 172, 175 (4th Cir.2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003) (citations omitted). In this regard, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir.2008) (quoting *Anderson*, 477 U.S. at 247–48) (emphasis added). A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures*, Inc., 264 F.3d 459, 465 (4th Cir.2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir.2001).

### IV.

The parties agree that the same legal framework applies to Massaro's Title VII and ADEA claims. To establish a prima facie case of retaliation under either Title VII or the ADEA, "a plaintiff must show (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Stokes v. Virginia Dep't of Corr.*, 512 F. App'x 281, 282 (4th Cir. 2013).

As to the first element of a retaliation claim, protected activity, there is no doubt that Massaro engaged in protected activity when he filed a complaint that he was not promoted due to sex and age discrimination. The Fourth Circuit has explained that protected activity encompasses two categories: (1) participation in an ongoing investigation alleging discrimination and (2) opposing discriminatory practices in the workplace. *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). Massaro's September 26, 2018 complaint clearly qualifies as participation in an ongoing investigation and therefore Massaro engaged in protected activity.

Massaro also argues in his summary judgment briefing, for the first time in this case, that his statements to LaBarca in May 2019 also qualify as protected activity. Massaro's arguments

as to this additional protected activity are precluded by Massaro's Second Amended Complaint, which alleged that Massaro's engaged in protected activity only "when he filed a complaint charging the Police Department with illegal discrimination based on gender and race in its failure to promote him to First Lieutenant." Dkt. 13 at 9. Massaro was free to include other incidents of alleged protected activity in his complaint, but Massaro did not do so. Indeed, Massaro sought (and received) leave of Court *twice* to amend his complaint, yet never made any amendments to add this newly alleged protected activity. Thus, Massaro may not do so now merely in the process of his summary judgment briefing. In this respect, the Fourth Circuit has been clear "that a plaintiff may not raise new claims after discovery has begun without amending his complaint." *Cloaninger ex rel. Est. of Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009). Indeed, district courts in the Fourth Circuit "have consistently concluded that a party may not use a brief opposing summary judgment to amend a complaint." *Brass v. SPX Corp.*, No. 314CV00656RJCDSC, 2019 WL 7373785, at *2 (W.D.N.C. Dec. 31, 2019) (citing *Robinson v. Bowser*, No. 1:12-cv-301, 2013 WL 5655434, at *3 (M.D.N.C. Oct. 16, 2013)). Accordingly, Massaro may not amend his complaint at this juncture to allege a new Title VII or ADEA claim, and therefore the only protected activity properly considered in resolving the summary judgment motions is Massaro's September 26, 2018 complaint that a less qualified candidate was promoted instead of Massaro.

As to the second element of a *prima facie* case of retaliation, which requires that the plaintiff must have suffered an adverse employment action, the parties also agree that Massaro suffered an adverse employment action. Fairfax County concedes that Massaro's disciplinary transfer out of the Academy constitutes an adverse employment action. Although the Fourth Circuit has held that a mere transfer of job titles is not enough to constitute an adverse

9

employment action, where the transfer involves "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion," such transfer constitutes an adverse employment action. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). That is precisely what happened here; Massaro lost supervisory responsibility when he was transferred from his position as a supervisor at the Academy to an overnight patrol shift, and therefore Massaro's transfer qualifies as an adverse employment action because.

Massaro alleges additional adverse employment actions, including a failure to investigate Massaro's September 2018 complaint, orchestrating LaBarca's complaint against Massaro, and the various disciplinary measures the department took against Massaro in the course of investigating LaBarca's complaint. These additional alleged adverse unemployment actions are unpersuasive; they find no support in the factual record assembled for summary judgment. First, the undisputed factual record is clear that Massaro's September 2018 discrimination complaint was thoroughly investigated by both OHREP and IAB. *See, e.g.*, Dkt. 32-9 (describing OHREP's investigation of Massaro's complaint); Dkt. 32-4 (describing IAB's review of Massaro's complaint). Both agencies conducted their own review of the 2018 promotion process and independently concluded that Massaro's complaint was without merit.

Second, the factual record is devoid of any proof that the Police Department orchestrated LaBarca's complaint against Massaro. Indeed, the deposition testimony of both Massaro and LaBarca confirms that Massaro initiated the conversation with LaBarca that led to LaBarca's complaint, and the only argument that the department somehow orchestrated this complaint is based on Massaro's own unsupported allegations.[4] But as the Fourth Circuit has made clear,

---

[4] To be sure, Massaro and the Police Department dispute who said what during the conversation. LaBarca maintains that Massaro told her that LaBarca's gender was a decisive factor in her selection for promotion, and that other, more qualified candidates should have been promoted

"surviving summary judgment…requires evidence, not unsupported conjecture." *Graves v. Lioi*, 930 F.3d 307, 324 (4th Cir. 2019). Massaro has provided no record evidence that the department orchestrated LaBarca's complaint in an effort to ensnare Massaro. Thus, although the record shows that Massaro suffered an adverse employment action when he received a disciplinary transfer out of his supervisor role at the Academy, the undisputed factual record provides no basis from which a reasonable jury could conclude that Massaro suffered any adverse employment actions other than the transfer of job titles.

Although Massaro has little trouble establishing the first two elements of a *prima facie* case of workplace retaliation, Massaro cannot establish the third element—the causal relationship between Massaro's protected activity and his transfer of job titles—as the evidence does not show a causal relationship between Massaro's protected activity and the adverse employment action Massaro suffered. A plaintiff in a retaliation suit may prove retaliation using either (i) direct evidence of retaliation or (ii) circumstantial evidence showing that the stated reasons for adverse employment actions were merely pretextual. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013). Whether the plaintiff uses direct or circumstantial evidence to make his case, the plaintiff must nonetheless present evidence of "but-for" causation. *Id.*

There is no direct evidence in this record that the adverse employment action Massaro claims, namely the disciplinary measures Massaro received following LaBarca's complaint, occurred because of Massaro's protected activity. The parties have developed an extensive

---

before LaBarca. *See* Dkt. 32-14 at 24–27. Massaro maintains instead that LaBarca told Massaro that LaBarca was unsure that LaBarca was ready for her promotion and only then did Massaro say that LaBarca's gender was a factor in her promotion. *See* Dkt. 15 at 15–18. This dispute is not material to the summary judgment motions at bar; the factual record makes undisputedly clear that Massaro initiated this conversation, undermining Massaro's claim that LaBarca orchestrated this conversation in an attempt to ensnare Massaro.

factual record during discovery, and that record discloses no connection between Massaro's September 2018 complaint and the May 2019 investigation and disciplinary action Massaro suffered. To the contrary, the record is replete with information showing that the May 2019 investigation stemmed from Massaro's conduct with LaBarca in May 2019 and that the department's disciplinary measures only involved a review of Massaro's May 2019 conduct—the conversation with LaBarca. *See, e.g.*, Dkt. 32-13 at 67–68 (Detective Hirshey's deposition testimony concerning Massaro's IAB interviews, during which Massaro was questioned about his conversation with LaBarca); Dkt. 32-11 (Major Blakely's deposition testimony about Blakely's review of Massaro's suspension, which focused on Massaro's comments to LaBarca and conduct during IAB interviews).

Even without direct evidence of a causal connection between protected activity and adverse employment action, however, the Fourth Circuit has held that "a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). Thus, Massaro may prevail by showing that he suffered an adverse employment action reasonably soon after he filed his complaint against the Police Department. But the record reflects that substantial time elapsed between the protected activity, which occurred in September 2018, and the adverse employment action, which occurred in May 2019. In this regard, the Supreme Court has explained that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Fourth Circuit recently observed that "courts within our Circuit have

12

found that shorter lapses of time similar to the three-month period at issue in the case before us are insufficient to infer a causal relationship without other evidence of a causal link." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021). Here, however, there is a much longer time gap between Massaro's complaint-which occurred in September 2018 and was fully adjudicated by October of that same year- and LaBarca's complaint and the subsequent investigation, which occurred in May 2019. Thus, this time lapse is to great to support an inference that his protected activity was the but-for cause of the adverse employment actions Massaro suffered. To the contrary, the record shows that the disciplinary actions taken against Massaro were the result of a lengthy investigation process that had nothing to do with Massaro's September 2018 complaint.

V.

Massaro also alleges that Fairfax County infringed on Massaro's First Amendment rights and seeks relief pursuant to 42 U.S.C. § 1983. As the Fourth Circuit has instructed, "a public employer contravenes a public employee's First Amendment rights when it discharges or 'refuses to rehire [the] employee,' or when it makes decisions relating to 'promotion, transfer, recall, and hiring based on the exercise of' that employee's free speech rights." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 316 (4th Cir. 2006) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir.2000)) (internal quotation marks omitted). The Fourth Circuit uses a three-prong analysis to determine whether an employee has stated a § 1983 retaliation claim:

(1) "Whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest;"

> (2) "Whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and"
>
> (3) "Whether the employee's speech was a substantial factor in the employee's termination decision."
>
> *Lane v. Anderson*, 660 F. App'x 185, 191 (4th Cir. 2016).

The Fourth Circuit has further clarified that "[t]he first two prongs present questions of law to be resolved by the court, and the third prong is a question of fact best resolved on 'summary judgment only in those instances when there are no causal facts in dispute.'" *Lane*, 660 F. App'x at 191 (quoting *Love-Lane*, 355 F.3d at 776).

Massaro's First Amendment retaliation claim is based on the same allegations in Massaro's Title VII and ADEA claims. Specifically, Massaro alleges that (i) Massaro engaged in protected speech as to a matter of public concern when he filed his September 2018 complaint about the Police Department's failure to promote Massaro and (ii) the Police Department retaliated against Massaro because of Massaro's protected speech. As with his Title VII and ADEA claims, however, Massaro's First Amendment claim must fail because the record contains no evidence to warrant a reasonable jury to conclude that Massaro's protected speech was a substantial factor in the Police Department's decision to discipline Massaro. *See Lane*, 660 F. App'x at 191. It is unnecessary to address the first two elements of a § 1983 First Amendment retaliation claim, which involve delicate balancing of the public nature of the speech and the workplace efficiency concerns that speech implicated, because Massaro's claim plainly fails on the third prong.

14

The Fourth Circuit has explained that the third prong of a First Amendment retaliation claim, the causation requirement, is "rigorous in that the protected expression must have been the but for cause of the adverse employment action alleged." *Ridpath*, 447 F.3d at 318 (internal citations omitted). To establish a *prima facie* case of First Amendment retaliation and survive summary judgment, a plaintiff "must put forward evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 655 (4th Cir. 2017). It is clear that the undisputed factual record in this case fails to satisfy this rigorous causation requirement.

As discussed *supra*, there is no direct evidence in the record showing a connection between Massaro's September 2018 complaint and the disciplinary action the Police Department took against Massaro in May 2019. And although Massaro could have survived summary judgment by providing circumstantial evidence linking his complaint to his adverse employment actions, no such circumstantial record evidence exists and the two events occurred more than eight months from one another and thus do not support a circumstantial inference of causation. As the Fourth Circuit has made clear, "[w]here a plaintiff rests his case [of First Amendment retaliation] on temporal proximity alone, the temporal proximity must be very close." *Penley*, 876 F.3d at 656. More specifically, in *Penley* the Fourth Circuit made clear that alleged "knowledge eight to nine months prior is not very close." *Id.* (internal citations omitted); *see also Booth v. Maryland,* 337 Fed. App'x. 301, 310 (4th Cir. 2009) (per curiam) (holding that a nine-month gap between protected speech and alleged retaliatory acts was too remote to prove a causal connection alone).

Massaro's First Amendment retaliation claim must therefore fail, as the undisputed factual record contains no evidence suggesting that Massaro's May 2019 disciplinary transfer was motivated by Massaro's September 2018 protected speech.

## VI.

For the foregoing reasons, the Police Department's motion for summary judgement must be granted as to each count and the case must be dismissed. For the same reasons, Massaro's motions for partial summary judgment must be denied.

An appropriate Order reflecting the issues in this Memorandum Opinion will issue separately.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
February 15, 2022.

/s/
T. S. Ellis, III
United States District Judge